UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**PETER WILLIAMS, ET AL.,**

Plaintiffs,

v. **No. 4:26-cv-00433-P**

**DALLAS-FORT WORTH INTERNATIONAL AIRPORT BOARD, ET AL.,**

Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion to Dismiss. ECF No. 10. Having reviewed the filing and the relevant law, the Court will **GRANT** Defendants' Motion to Dismiss as to the Section 1983 claims and declines to exercise supplemental jurisdiction over the remaining claims.

## BACKGROUND

On April 14, 2024, Plaintiffs Peter Williams and Dr. Mary Jane Williams were ticketed passengers on American Airlines flights from Evansville, Indiana to Phoenix, Arizona with a connection at Dallas-Fort Worth International Airport ("DFW"). ECF No. 2 at 5. During a dispute over baggage policy between Plaintiffs and American Airlines, Defendant Officer B. Jackson and three unidentified officers responded to the jetway. ECF No. 2 at 5. After some back and forth, officers and airline personnel eventually instructed Mr. Williams to vacate the jetway. ECF No. 2 at 6. Mr. Williams nevertheless attempted to re-board the aircraft, at which point Officer Jackson grabbed Mr. Williams. ECF No. 2 at 6. Plaintiffs and Defendant dispute what happens next. *Compare* ECF No. 2 at 6 *with* ECF No. 10 at 9.

According to police body-cam footage, Officer Jackson stated that Mr. Williams was "under arrest now" and attempted to restrain him. ECF

No. 18-1, Exhibit 4 at 2:06. Mr. Williams can be heard replying "No" repeatedly and appears to be physically resisting arrest for a period of roughly 25 seconds. ECF No. 18-1, Exhibit 4 at 2:10–2:45. Eventually, Officer Jackson takes Mr. Williams to the ground in what appears to be an attempt to restrain and handcuff him. ECF No. 18-1, Exhibit 4 at 2:45–2:51. Mr. Williams continues to writhe on the ground, evading handcuffs, at which point Officer Jackson places knee in his back and once again informs him that he is under arrest. ECF No. 18-1, Exhibit 4 at 2:52. Once more, Mr. Williams replies repeatedly "No." ECF No. 18-1, Exhibit 4 at 2:53–2:55. There is then a period of brief respite wherein Officer Jackson continues to have his knee on Mr. Williams who is audibly objecting but does not appear to be actively resisting, though his hands remain uncuffed. ECF No. 18-1, Exhibit 4 at 3:00–3:15. After this period, Officer Jackson informs Mr. Williams that "if you do not put your hands behind your back, you will be tased." ECF No. 18-1, Exhibit 4 at 3:15. Mr. Williams nevertheless continues to verbally object and physically resists Officer Jackson's attempt to restrain his hands. ECF No. 18-1, Exhibit 4 at 3:26. Officer Jackson finally discharges his taser once to Mr. Williams' side. ECF No. 18-1, Exhibit 4 at 3:29.

Plaintiffs filed suit against the Dallas-Fort Worth International Airport Board ("the Board"), Dallas-Fort Worth Airport Department of Public Safety, Officer Jackson, and bystander officers on April 8th, 2026, alleging civil-rights violations under 42 U.S.C § 1983 and advancing various state-law claims. ECF No. 1. On June 22nd, 2026, Defendant offered the Motion now under consideration.

## LEGAL STANDARDS

Under Fed R. Civ. P. 12(b)(6), dismissal is appropriate if Plaintiffs' pleading fails to state a claim upon which relief can be granted. In conducting that review, the Court accepts "all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Morgan v. Swanson*, 659 F. 3d 359, 370 (5th Cir. 2011) (en banc). The court does not, however, "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Id.* (cleaned up)

(quoting *Ashcroft v. Iqbal.*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).

A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011). Further, a court may permissibly consider "[d]ocuments that a defendant attaches to a motion to dismiss" without converting the motion to dismiss to a motion for summary judgment if those documents "are referred to in the plaintiff's complaint and are central to her claim."[1] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Moreover, where video recordings are included in the pleadings, the video depictions of events, viewed in the light most favorable to the plaintiffs, should be adopted over the factual allegations in the complaint if the video "blatantly contradict[s]" those allegations. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).

## ANALYSIS

The Court's analysis proceeds in three parts. *First*, the Court reasons that Plaintiffs' Section 1983 claims against Officer Jackson are barred by qualified immunity and should therefore be dismissed. This applies with equal force to Plaintiffs' claims as to bystander liability. *Second*, the Court finds that the Plaintiffs have not plausibly alleged a claim for municipal liability. *Third*, the Court concludes that it may, in its discretion, decline to hear Plaintiffs' remaining state law claims.

### A. The Officers are Entitled to Qualified Immunity Because No Clearly Established Law "Squarely Governs"

"Qualified immunity protects officers from suit unless their conduct violates a clearly established [statutory or] constitutional right."

[1] This applies, too, to video exhibits. *See Esco v. City of Chicago,* 107 F.4th 673, 678 (7th Cir. 2024) (writing that "the court, therefore, may examine exhibits, including video exhibits, attached to the complaint, or referenced in the pleading if they are central to the claim"); Johnson v. City of Atlanta, 107 F.4th 1292, 1298 (11th Cir. 2024) (affirming the district court's consideration of video evidence despite it not being attached to, or even mentioned in, the plaintiff's complaint).

*Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). "Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (citation omitted). Plaintiff bears the burden to "plead facts which, if proved, would defeat the claim of immunity." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).

Accordingly, Officer Jackson is entitled to qualified immunity at the motion-to-dismiss stage unless Plaintiffs have alleged facts sufficient to plausibly show that (1) the defendant's conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009). The Court has discretion as to which of the two prongs should be analyzed first. *Cope v. Cogdill*, 3 F.4th 198, 236 (2021). Because Plaintiffs do not carry their burden as to the clearly established prong, this Court need not evaluate the validity of the excessive force claim.

Plaintiffs do not plausibly show that Officer Jackson violated any "clearly established" right. This burden is a heavy one: A right is "clearly established" only if preexisting precedent "ha[s] placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). This restrictive analysis provides that the right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (internal quotation marks and citation omitted). Courts must not "define clearly established law at a high level of generality"; instead, their "inquiry must be undertaken in light of the specific context of the case." *Id.* at 12 (internal quotation marks and citations omitted). Therefore, unless existing precedent "squarely governs" the conduct at issue, an official will be entitled to qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam); *Mullenix*, 577 U.S. at 12 (emphasizing that "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established" (internal quotation marks and citation omitted)).

To put it pointedly, Plaintiffs must "identify[] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and . . . explain[] why the case clearly proscribed the conduct of that individual officer." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020). This cannot be undertaken at too broad a level of generality, *id.*, and it certainly cannot be established by citation to nonexistent cases.[2]

Here, Plaintiffs make a borderline sanctionable attempt to identify "clearly established" law from five cases. ECF No. 18. Three of these cases—*Iko v. Shreve*, 122 F.3d 707 (4th Cir. 1997), *Yates v. Terry*, 817 F.3d 877 (4th Cir. 2016), and *Dawkins v. Fields* 354 F.3d 392 (5th Cir. 2003)—are either non-existent or mistakenly out-of-circuit and, in any event, inapposite. With respect to *Dawkins,* this Court cannot even find a case purporting to "clearly establish" law on the matter and wastes its limited judicial resources in doing so. As to *Iko*, mistakenly cited as a 5th Circuit case, Plaintiffs presumably meant to refer to *Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008). But this out-of-circuit case concerned correctional officers who broke up a fight by administering pepper spray to a non-confrontational inmate, not a taser applied to a resistant passenger. It therefore cannot constitute "clearly established" law in this Circuit nor "squarely governs" on its own facts. The same is true of *Yates*. This out-of-circuit decision concerned an officer who tased a non-resisting arrestee three separate times. *Id.* at 881. There, the officer tased Yates for a second time when the suspect was already on the ground "ma[king] no attempt to get up" and a third time after he asked his brother to call for the officer's supervisor. *Id. Yates* is thus both non-

[2] The Court cautions that use of generative artificial intelligence that results in repeated misrepresentations of law may qualify for sanctions under Fed. R. Civ. P. 11(b)–(c) ("The rule . . . require[s] litigants to 'stop-and-think' before initially making legal or factual contentions . . . A litigant's obligations . . . include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."); Tex. Disciplinary Rules Prof'l Conduct R. 3.01 ("A lawyer shall not . . . assert or controvert an issue [in a proceeding], unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous."); Id. 3.03(a)(1) ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal"); Id. 8.04(a)(3) (A lawyer shall not "engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation"). The Fifth Circuit, for example, recently approved a $2,500 sanction for AI hallucinated misrepresentations. *Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231 (2026).

binding and materially dissimilar. Neither of these cases therefore carry Plaintiffs' burden. The Court has little patience for such "lazy lawyering."

The remaining two cases, *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989), fare no better. Plaintiffs argue that *Garner* clearly establishes that non-deadly force against a compliant, non-threatening person is unreasonable. ECF No. 18 at 7. But this formulation asks too much of *Garner*. In *Garner*, police officers pursued and shot a fleeing purse-snatcher. 471 U.S. at 4. At most, the 5th Circuit has noted, *Garner* stands for the proposition that *deadly* force is prohibited against an unarmed burglary suspect fleeing on foot who poses no immediate threat. *Harmon v. City of Arlington*, 16 F.4th 1159, 1167 (5th Cir. 2021). It simply does not follow that because deadly force is unreasonable under those circumstances, non-deadly force (like a taser) must be too. *Cf.* ECF. No 18 at 7. That inference gets the reasoning precisely backward and is the kind of defective, over-generalized extension that the Supreme Court has repudiated. *See, e.g.*, *Kisela v. Hughes,* 584 U.S. 100, 105 (2018) (rejecting use of broad formulation of *Garner*'s holding).

*Graham v. Connor* does not help Plaintiffs either. In *Graham*, the Court held that the question of excessive force requires "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396 (1989). There, officers applied force to a diabetic detained during an investigative stop that resulted in a broken foot, cuts on his wrists, a bruised forehead, and an injured shoulder. *Id*. at 390. But the Court cautioned that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396. The reasonableness of force required, therefore, should be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 397.

Here, the Court need not, and does not, decide whether Jackson violated the Fourth Amendment when he used force against Plaintiffs. For even assuming a Fourth Amendment violation occurred—a proposition that is not at all evident—Plaintiffs' desired principle simply cannot be extracted from *Garner* with sufficient clarity to constitute "clearly established" law. *Cf*. ECF. No. 18 at 7 (misconstruing *Garner* to stand for the proposition that application of force against a compliant, non-threatening person is always objectively unreasonable).

In any event, the Supreme Court has noted that "*Garner* and *Graham* do not by themselves create clearly established law outside an 'obvious case.'" *White v. Pauly*, 580 U. S. 73, 80 (2017) (internal quotation marks omitted). And while undoubtedly "obvious" excessive force cases can arise, they are extremely rare. *See*, *e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (per curiam) (noting that to qualify as an "obvious" case, there must be (1) particularly egregious facts and (2) no evidence that the officials' actions were compelled by necessity or exigency). The facts alleged here involving a single taser discharge against a non-compliant adult are not so egregious as to be an obvious case.

The "clearly established" inquiry is demanding, especially in claims for excessive force. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 (1986). Here, Plaintiffs failed to identify any clearly established law that would place beyond doubt the constitutional question in this case. As a result, their excessive force claim cannot succeed.

Finally, while it is true that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under Section 1983, *Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995), this claim rises and falls with Plaintiffs' claim against Officer Jackson. If Plaintiffs do not plausibly allege that clearly establish law forbids Officer Jackson's actions, then *a fortiori* they have not proved that bystanding officers were not entitled to immunity. Put otherwise, if a reasonable official would not have understood that his conduct violated the Fourth Amendment, neither

would a reasonable bystander. Accordingly, Plaintiffs' claim for bystander liability by excessive force are also barred.

**B. Plaintiffs Do Not Plausibly Allege Municipal Liability**

Plaintiffs' complaint presses two theories of municipal liability. First, Plaintiffs allege that DFW had a "custom and practice" of using excessive force against compliant individuals. ECF No. 2 at 12. Second, Plaintiffs allege that DFW failed to train officers who violated constitutional rights. ECF No. 2 at 12. Neither claim survives.[3]

1. Plaintiffs Do Not Plausibly Allege Custom and Practice

A governmental entity may only be held liable in a Section 1983 suit when the complained-of constitutional injury, here the use of excessive force, results from "execution of a government's policy or custom." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Per *Monell*, "municipal liability under § 1983 requires proof of three elements: [1] a policymaker; [2] an official policy; and [3] a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* at 694. To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

The problem is that Plaintiffs do not plausibly allege any official policy or custom at all. The second element—an official policy—includes "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by

---

[3] Plaintiffs sue both DFW Airport Department of Public Safety ("DPS") and DFW International Airport Board ('the Board"). For Plaintiffs to sue a department of a city, that department must enjoy a separate legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). But as Defendants note, DFW DPS does not "enjoy a separate legal existence" from the city. ECF No. 10 at 17. The capacity of an entity to be sued is determined "by the law of the state where the court is located." FED. R. CIV. P. 17(b); see also *Darby* 939 F.2d at 313. Unless the political entity that created the department has taken "explicit steps to grant the servient agency with jural authority," the department lacks the capacity to sue or to be sued. *Id*. Plaintiffs' do not allege separate jural authority and, in any event, concede this point in their Reply. ECF No. 18 at 9. Even assuming *arguendo* that they are separate entities, Plaintiffs have not plausibly alleged *Monell* liability against either entity and thus both claims should be dismissed.

an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam). But the complaint does not identify a single official policy to supply the requisite moving force behind the alleged violation. ECF No. 2.

True, an official policy may also be "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy" and "practically have the force of law." *Id*; *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011). But Plaintiffs do not plead that DFW maintained a policy of widespread and persistent use of excessive force. Nowhere in the complaint do Plaintiffs allege *other* incidents of excessive force or misuse of taser. The only oblique reference to a pattern is that the "police regularly encounter non-criminal customer service disputes," ECF No. 18 at 9, and a threadbare recitation in the complaint of a "custom and practice of using excessive force against compliant individuals." ECF No. 2 at 9. But, as the Fifth Circuit has noted, "if actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). Plaintiffs' conclusory statements without additional factual enhancement do not come close to plausibly alleging the custom or policy required for municipal liability.

2. <u>Plaintiff's Do Not Plausibly Allege a Failure to Train</u>

Neither have Plaintiffs plausibly pleaded that DFW's allegedly inadequate training or supervision of Officer Jackson was a moving force behind the supposed constitutional violation. To establish municipal liability under a failure-to train theory, Plaintiffs must prove three elements: 1) the city failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's

constitutional rights. *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021). Plaintiffs argue that DFW failed to establish adequate policies governing taser deployment, to train in de-escalation, and to discipline or supervise officers, ECF No. 2 at 9, and that this amounted deliberate indifference to the need for better training and supervision. ECF No. 2 at 13. Specifically, Plaintiffs seize on Officer Jackson's fellow officer's statement "No, No, it's good, we got this" to demonstrate inadequate training and supervision. ECF No. 2 at 13. But this does not work either.

In *Littell v. Houston Independent School District* 894 F.3d 616 (5th Cir. 2018), the Fifth Circuit clarified the two means of proving municipal liability under a failure-to-train theory outlined by the Supreme Court in *City of Canton v. Harris* 489 U.S. 378 (1989). The first is when violations are so frequent that the factfinder can infer the need for further training was obvious to policymakers. *Littell,* 894 F.3d at 624. But as noted above, Plaintiffs have not alleged a pattern. However, even absent proof of pattern, the Court noted that deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id*. Presumably, Plaintiffs rely on the latter single-incident theory.

Yet Plaintiffs do not plausibly plead that DFW was deliberately indifferent to the need for further training. The single-incident theory is generally reserved for those cases in which the government actor was provided with no training whatsoever. *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). Further, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

For one, Plaintiffs' threadbare allegations argue as to the *extent* of training, not that officers lack training whatsoever. ECF No. 2 at 13. But even more fundamentally, Plaintiffs offer no factual support for these contentions other than Officer Jackson's fellow officer's statement that "no, no, we got this." ECF. No 2 at 13. This statement alone, however, cannot support the inference plaintiff desires. Even supposing that his admonition to his fellow officer indicates disapproval of the

technique, the lone statement does not plausibly support inadequate training. The statement could just as well indicate that officers *had* received training and therefore disapproved. But the statement and accompanying threadbare conclusions do not "allege with specificity how a particular … program is defective." *Zarnow v. City of Wichita Falls*, 614 F. 3d 161, 170 (5th Cir. 2020). Nor do they approach deliberate indifference, which "requires a showing of more than negligence or even gross negligence." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Plaintiffs thus also fail to plausibly allege municipal liability under a failure-to-train theory.

### C. The Court Declines to Exercise Supplemental jurisdiction Over Plaintiffs' State Law Claims

Because the Plaintiffs' constitutional claims are barred by qualified immunity and foreclosed under *Monell*, and thus should be dismissed, only the state law claims remain. Those too should be dismissed.

Under 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. We are also guided by "considerations of judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy,* 532 F.3d 342, 346 (5th Cir. 2008) (citing *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)). Our general rule is to dismiss state law claims when the federal claims to which they are pendent are dismissed. *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992). However, we review each claim "on a case-by-case basis, and no single factor is dispositive." *Mendoza*, 532 F.3d at 346.

Here, considerations of judicial economy, convenience, fairness, and comity support dismissal. It would serve the important interests of federalism and comity, because federal courts are courts of limited jurisdiction that "often are not as well equipped for determinations of state law as are state courts." *Parker*, 972 F.2d at 588–89. Plaintiffs' state law claims, though themselves subject to serious jurisdictional

hurdles, nevertheless involve interpretation of state law and further factual development that is best left to state court.

## CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to the Section 1983 claims **with prejudice** and dismisses the state law claims **without prejudice** so they can be pursued in Texas state court.

**SO ORDERED** on this **27th day of August 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE